IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KARIM O'GARRO, | : | Civil No. 3:24-cv-1996 |
| Petitioner | : | (Judge Mariani) |
| v. | : | |
| WARDEN CRAIG A. LOWE, | : | |
| Respondent | : | |

## MEMORANDUM

Petitioner Karim O'Garro ("O'Garro") is an immigration detainee in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"). O'Garro, who is housed at the Pike County Correctional Facility, commenced this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241. (Doc. 1). He seeks "[t]ransfer back to a facility in Massachusetts where [he] may stand a fair trial before justice and be ex[]onerated from these criminal allegations. Or rule in part that [he] be released on parole while [he goes] through criminal proceedings considering [his] order of removal is currently not in the foreseeable future." (*Id.* at 9). For the reasons set forth below, the Court will deny habeas relief.

**I.   Background**

O'Garro is a native and citizen of Antigua-Barbuda. (Doc. 7-1, at 4, 6). On June 15, 2019, O'Garro was admitted to the United States in Atlanta, Georgia, on a B-2

nonimmigrant, visitor visa.[1] (*Id.* at 6). O'Garro's B-2 nonimmigrant, visitor visa expired on December 14, 2019. (*Id.*). O'Garro remained in the United States beyond December 14, 2019, without authorization from the Immigration and Naturalization Service or the Department of Homeland Security. (Doc. 7-2).

On December 25, 2020, the United States Customs and Border Patrol ("CBP") encountered O'Garro in Buffalo, New York. (Doc. 7-1, at 6). CBP served O'Garro with a Notice to Appear, and he was charged as removable under Section 237(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(B).[2] (*Id.*). Because O'Garro was traveling with his father, who was suffering from a medical condition, O'Garro was released on his own recognizance. (*Id.*). The Notice to Appear was returnable on November 23, 2021, but was dismissed for failure to prosecute. (*Id.*).

On September 10, 2022, O'Garro was arrested in Rhode Island on a kidnapping warrant, issued out of Massachusetts. (*Id.*). O'Garro was transported to Massachusetts and an indictment was returned charging him with kidnapping and related offenses. (*Id.*). On March 3, 2023, O'Garro was arraigned on the indictment, and he entered a plea of not guilty. (Doc. 7-3, at 55). At a pre-trial detention hearing, bail was set. (*Id.* at 55-56).

---

[1] According to the United States Department of State website, "[v]isitor visas are nonimmigrant visas for persons who want to enter the United States temporarily…for tourism (B-2 visa)." https://travel.state.gov/content/travel/en/us-visas/tourism-visit/visitor.html (visited Feb. 6, 2025).

[2] INA § 237(a)(1)(B) (8 U.S.C. § 1227(a)(1)(B)) states: "Any alien who is present in the United States in violation of this chapter or any other law of the United States, or whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked under section 1201(i) of this title, is deportable."

O'Garro posted bail and he was released on May 3, 2023. (*Id.*). These charges remain pending. (*Id.* at 6).

On May, 2023, prior to his release, ICE Enforcement and Removal Operations ("ERO") encountered O'Garro at the Massachusetts Court. (Doc. 7-1, at 6). ICE ERO officials arrested O'Garro based on Section 237(a)(1)(B) of the Immigration and Nationality Act and based on his arrest for kidnapping. (*Id.*). O'Garro was therefore taken into ICE custody on May 3, 2023. (*Id.*). He was charged as removable under Section 237(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(B). (*Id.*). O'Garro challenged his removal, but an immigration judge denied his claim on December 19, 2023, and he was ordered removed to Antigua-Barbuda. (Doc. 7-4). O'Garro appealed this decision to the Board of Immigration Appeals ("BIA"). (Doc. 7-10). On May 16, 2024, the BIA dismissed O'Garro's appeal. (Doc. 7-11). His removal order became final on that date—May 16, 2024. *See* INA § 1241.1(a).

O'Garro requested a custody redetermination hearing pursuant to 8 C.F.R. § 1236. (Doc. 7-3, at 1). On February 5, 2024, an immigration judge denied O'Garro's application, finding that he was a danger to the community and a potential flight risk. (*Id.* at 1-2)

ICE has been working with officials from the Antiguan Embassy since June of 2024 to effectuate O'Garro's removal. (Doc. 7-12, Declaration of Deportation Officer Fadi Shadid ("Shadid Decl."), ¶¶ 15-28). On June 10, 2024, ICE ERO officials sent a travel document request to the consulate. (*Id.* ¶ 15). On June 28, 2024, O'Garro underwent an interview

with officials from Antigua.  (*Id.* ¶ 17).  ICE ERO officials regularly communicated with the Antiguan Embassy and requested updates on O'Garro's travel document.  (*Id.* ¶¶ 16, 18-19, 21-23, 25-26).  In its most recent update, on November 25, 2024, the Antiguan Embassy informed ICE ERO officials that O'Garro's travel document should be issued soon.  (*Id.* ¶ 26).  Antigua has not denied O'Garro's citizenship or the issuance of a travel document, and he is scheduled for removal to Antigua on a date in the reasonably foreseeable future.  (*Id.* ¶ 28).

O'Garro is being detained pursuant to 8 U.S.C. § 1231(a).  His removal period commenced when the BIA dismissed his appeal on May 16, 2024.  The gravamen of O'Garro's habeas petition is that his removal to Antigua-Barbuda is not reasonably foreseeable and therefore he should be released from ICE detention.  (Doc. 1).

II. **Legal Standard**

Under 28 U.S.C. § 2241(c), a prisoner or detainee may receive habeas relief only if he "is in custody in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).  Because O'Garro filed the instant petition while he was detained within the jurisdiction of this Court, is still currently detained by ICE, and asserts that his continued detention violates due process, this Court has jurisdiction over his Section 2241 petition.  See *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

4

## III.  Discussion

ICE is detaining O'Garro under the post-removal detention provision of the INA, which is codified at § 1231(a).[3] Section 1231(a) of Title 8 of the United States Code "governs the detention, release, and removal of individuals 'ordered removed.'" *Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022).  Section 1231(a)(1)(A) provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A).  The noncitizen must be detained during this 90-day timeframe, *id.* § 1231(a)(2) ("During the removal period, the Attorney General *shall* detain the alien" (emphasis added)), which is "referred to as the 'removal period.'" *Id.* § 1231(a)(1)(A).  That 90-day period begins to run, for noncitizens who are detained or confined for criminal offenses, on "the date the alien is released from [non-immigration] detention or confinement." *Id.* § 1231(a)(1)(B)(iii).

Following expiration of the 90-day removal period, certain noncitizens "may" be detained if they fall into one of four distinct categories: "(1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those [determined] 'to be a risk to the community'; and (4) those [determined] to be 'unlikely to comply with the order of removal.'" *Arteaga-Martinez*, 596 U.S. at 578-79 (quoting 8 U.S.C. § 1231(a)(6)).  There is no dispute that O'Garro falls within one of the categories of

---

[3] O'Garro does not dispute that his detention falls under Section 1231(a).  (*See* Doc. 1, at 7 (citing Section 1231(a)(6) and *Zadvydas v. Davis*, 533 U.S. 678 (2001)).

5

noncitizens covered by § 1231(a)(6) and that he is being detained under this provision of the INA.

The text of § 1231(a)(6) does not contain an express limit on the duration a noncitizen can be detained under its authority. In 2001, the Supreme Court decided *Zadvydas v. Davis*, 533 U.S. 678 (2001), which held that post-removal detention for six months is "presumptively reasonable." *Id.* at 701. Beyond six months, if removal is no longer reasonably foreseeable, continued detention is no longer authorized under § 1231(a)(6). At that point, the Supreme Court explained, noncitizens detained under Section 1231(a)(6) past the six-month presumptively constitutional period may bring a claim in a federal habeas petition asserting that ICE no longer has the statutory authority for continued detention. *Id.* at 699-701. In such a proceeding, the Supreme Court instructed, the noncitizen must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* at 701. If the noncitizen does so, the burden would then shift to the government to produce "evidence sufficient to rebut that showing." *Id.*

Thereafter, in *Johnson v. Arteaga-Martinez*, the Supreme Court abrogated the Third Circuit's holding in *Guerrero Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208 (3d Cir. 2019), that Section 1231(a)(6) presumptively "requires the Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a

danger to the community." *Arteaga-Martinez*, 596 U.S. at 576. Importantly, however, the Court did not address the merits of the petitioner's individualized Due Process Clause challenge or hold that such a claim could not be pursued. *See id.* at 583-84. Moreover, the government reassured the *Arteaga-Martinez* Court that "as-applied constitutional challenges" to prolonged detention under Section 1231(a)(6) "remain available." *Id.* at 583. Here, O'Garro brings an as-applied procedural due process challenge. He claims that his unreasonably prolonged detention under § 1231(a)(6) without a bond hearing at which the government bears the burden of justifying his continued detention violates his rights under the Due Process Clause. (Doc. 1, at 7-8). In support, O'Garro contends that there is reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. (*Id.*).

Respondent asserts that O'Garro is not entitled to habeas relief under *Zadvydas* because he stands to be deported to Antigua-Barbuda. (Doc. 7). Respondent posits that O'Garro failed to offer any evidence to suggest that his removal will not take place within the reasonably foreseeable future. (*Id.* at 9-11). Thus, Respondent argues that the burden cannot shift to the Government to justify his continued detainment. (*Id.*; *see also Zadvydas*, 533 U.S. at 701).

The Court finds that O'Garro's detention under Section 1231(a)(6) has not become unconstitutionally prolonged. He has failed to establish "good reason to believe" that there is not a "significant likelihood of removal in the reasonably foreseeable future." *Johnson v.*

7

*Guzman Chavez*, 594 U.S. 523, 529 (2021). O'Garro's unsupported arguments are insufficient to substantiate a constitutional violation. Thus, his due process claim fails at the first step.

Even if O'Garro had carried his burden, Respondent has rebutted that showing. ICE is actively working to effectuate O'Garro's removal to Antigua-Barbuda. On June 10, 2024, ICE ERO officials sent a travel document request to the consulate. (Doc. 7-12, Shadid Decl. ¶ 15). On June 28, 2024, O'Garro underwent an interview with officials from Antigua. (*Id.* ¶ 17). ICE ERO officials have been regularly communicating with the Antiguan Embassy to obtain O'Garro's travel document. (*Id.* ¶¶ 16, 18-19, 21-23, 25-26). As of November 25, 2024, the Antiguan Embassy informed ICE ERO officials that O'Garro's travel document should be issued soon. (*Id.* ¶ 26). Respondent represents that Antigua has not denied O'Garro's citizenship or the issuance of a travel document, and he is scheduled for removal to Antigua on a date in the reasonably foreseeable future. (*Id.* ¶ 28).

In addition, ICE ERO conducted an administrative custody review on July 31, 2024, as required by 8 C.F.R. § 241.4. (*Id.* ¶ 20; Doc. 7-13). Following this review, ICE continued O'Garro's detention because he has "not demonstrated that, if released, [he would] not pose a danger to the community, as evidence by [his] criminal history in the United States which includes an arrest for aggravated kidnapping, assault with a dangerous weapon, armed robbery, and assault with a dangerous weapon " and, additionally, ICE "expects to receive the necessary travel documents to effectuate [his] removal." (Doc. 7-13, at 1).

Thereafter, on October 31, 2024, O'Garro underwent a panel interview pursuant to 8 C.F.R. § 241.4(i). (Doc. 7-12, Shadid Decl. ¶ 24). Following this interview, ICE continued O'Garro's detention "because of his criminal history and because travel plans were anticipated." (*Id.*).

O'Garro then underwent a 180-Day Post Custody Review on November 22, 2024, pursuant to 8 C.F.R. § 241.4. (*Id.* ¶ 27; Doc. 7-14). Following this interview, ICE again continued O'Garro's detention because "[t]he government of Antigua-Barbuda is working on issuing a travel document." (Doc. 7-14, at 1).

O'Garro has failed to show that there is no significant likelihood of removal in the reasonably foreseeable future. The Court, therefore, will deny O'Garro's Section 2241 petition.

## IV. Conclusion

Based on the foregoing, the Court will deny O'Garro's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1).

A separate Order shall issue.

_____
Robert D. Mariani
United States District Judge

Dated: February 7, 2025